UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **G&K SERVICES, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER  05-2614** |
| **CROWN ROOFING SERVICES, INC.** | * | **SECTION "L" (4)** |

**ORDER & REASONS**

Pending before the Court is G&K Services, Inc.'s Motion for Summary Judgment (Rec. Doc. 11).  For the following reasons, G&K Services, Inc's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

On February 21, 2005, G&K Services, Inc. ("G&K"), a uniform supply company, and Crown Roofing Services, Inc. ("Crown"), a roofing company, entered into Service Agreement No. 602639 ("Service Agreement").  The Service Agreement provided that G&K would supply Crown with certain services, a minimum number of uniforms, and other items for a period of sixty months in return for an agreed upon price.

By April 2005, Crown was allegedly experiencing problems with G&K's services. Specifically, Crown asserted that Mitch Bullinay, the G&K employee who was servicing Crown's account, repeatedly failed to deliver uniforms, delivered the wrong number of uniforms, and delivered uniforms to the wrong employee's locker or place in the facility, which made the uniforms difficult to locate.  Crown further contended that Mr. Bullinay would ignore Crown employees who had approached him with questions by walking away without even attempting to resolve the issues, rather than answer the questions.

As a consequence of Mr. Bullinay's actions, one of Crown's managers contacted G&K on numerous occasions expressing Crown's displeasure with Mr. Bullinay's services. Despite these contacts, G&K never replaced Mr. Bullinay on the Crown account.

In addition to Crown's problems with Mr. Bullinay's performance, Crown also had a problem with certain provisions of the Service Agreement. Under the Service Agreement, G&K remained the owner of all merchandise supplied to Crown. Furthermore, due to G&K's ownership, Crown was obliged to pay G&K for all merchandise that was lost or damaged beyond repair. Therefore, if an employee left Crown and failed to return his uniform, Crown was forced to reimburse G&K for the costs of the employee's unreturned uniforms. Due to the repeated realization of this scenario, Crown had allegedly become obligated to G&K for several thousand dollars in unreturned uniform costs.

On April 25, 2005, as a result of G&K's allegedly poor service and Crown's absorption of the rising unreturned uniform costs, Crown wrote a letter to G&K indicating that it was "faced with the business decision to terminate business with G&K . . . ." On May 3, 2005, after the letter and pursuant to G&K's request, representatives of both companies met to discuss Crown's problems. On May 12, 2005, after the meeting, G&K wrote a letter to Crown displaying a willingness to modify the Service Agreement and further indicating its intention to continue servicing Crown under the terms of the existing Service Agreement. On May 16, 2005, via a reply letter, Crown "decided to terminate business with [G&K] as of May 16, 2005" because of Crown's inability to afford the costs of unreturned uniforms. The May 16, 2005 letter, however, made no mention of or reference to Crown dissatisfaction with Mr. Bullinay's or G&K's services.

**II.     PRESENT MOTION**

Pursuant to the Service Guarantee section of the Service Agreement, G&K was required to:

> (a) return all items picked up on the normal delivery day by the next scheduled delivery day[;]
> (b) repair and return to [Crown] all items in need of repair on the next scheduled delivery day[;]
> (c) return all items in a clean and useable condition[; and]
> (d) deliver in one week, items of a standard size and color ordered for all new employees provided such order was received on a regular delivery day.

Furthermore, if Crown believed that G&K consistently failed to provide quality services as required under the Service Agreement, Crown could terminate the Service Agreement without penalty, provided that Crown first gave G&K written notice detailing such service deficiencies and G&K failed to resolve such deficiencies within sixty (60) days after G&K's receipt of such notice.  Moreover, under the Cancellation Without Cause section of the Service Agreement, if Crown "breache[d] or prematurely terminate[d] this [Service] Agreement for any reason, except for reasons set forth in the Guarantee clause above, [Crown would] pay G&K liquidated damages," attorneys' fees, and costs, in addition to any other damages suffered by G&K as a result of Crown's breach or premature termination.

In its motion for summary judgment, G&K contends that there is no genuine issue of material fact as to whether Crown breached the Service Agreement and, as such, it is entitled to judgment as a matter of law.  Specifically, G&K first asserts that Crown terminated the Service Agreement on May 16, 2005 via its May 16th letter.  Next, G&K contends that Crown's termination was premature because Crown failed to satisfy the notice provisions contained in the Service Guarantee section of the Service Agreement.  Lastly, G&K argues that the reason behind

Crown's premature termination entitles it to $144,293.63 in liquidated damages,[1] $7,734.36 in damages for unreturned items and an outstanding balance on invoices, and a currently unspecified amount in attorneys' fees and costs.[2]

On the other hand, Crown contends it terminated the Service Agreement on April 25, 2005. Furthermore, Crown asserts that its termination was not premature or in breach of the Service Agreement because G&K had previously breached the Service Agreement and, considering that the Service Agreement is a commutative contract, Crown was legally permitted to regard the Service Agreement as dissolved. Additionally, Crown argues that it did not have to comply with the notice provisions because it would have been vain and useless to do so. Furthermore, to the extent that the Court finds that Crown did breach the Service Agreement, Crown asserts that G&K cannot recover liquidated damages, attorneys' fees, or costs because the necessary requirement for such an award was not satisfied.

Therefore, to resolve this motion, the Court must decide three issues. First, the Court must determine when Crown terminated or breached the Service Agreement. Second, the Court must determine if Crown prematurely terminated the Service Agreement and, if so, was it justified in doing so. Third, if the Court finds that Crown prematurely terminated or breached

---

[1] Under the Service Agreement, liquidated damages are calculated by multiplying the number of remaining weeks under the Service Agreement at the date of termination times one-half the average weekly invoices. G&K contends that there 249 weeks remaining on the Service Agreement and that Crown's average weekly invoices were $1,158.99. G&K contends that this amount equals $144,293.63.

[2] Pursuant to the affidavit of G&K's counsel, Thomas Arnoult Rayer, Jr., G&K asserts that its attorneys' fees were $1,817.00 and its costs were $388.65 as of the filing of its motion for summary judgment. G&K, however, reserved the right to submit an additional affidavit reflecting its then current attorneys' fees and costs.

the Service Agreement without justification, then the Court must determine if G&K is entitled to liquidated damages, attorneys' fees, and costs.

## III.     LAW AND ANALYSIS

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  When considering a motion for summary judgment, the Court must review the facts and draw all inferences in the light most favorable to the party opposing the motion.  *General Universal Systems, Inc. v. Lee*, 379 F,3d 131, 137 (5th Cir. 2004).

First, the Court must determine when Crown terminated the Service Agreement.  Crown argues that it terminated the Service Agreement on April 25, 2005 via its April 25th letter; whereas, G&K contends that Crown terminated the Service Agreement on May 16, 2005 via Crown's May 16th letter.  In Crown's April 25th letter, Crown stated that it was "faced with the business decision to terminate business with [G&K] . . . ."  In Crown's May 16, 2006 letter, Crown stated that it "has decided to terminate business with [G&K] as of May 16, 2005."  The language of the April 25th letter indicates that Crown was considering terminating its business with G&K at some time in the future.  Conversely, the language of the May 16th letter indicates that Crown is actually and immediately terminating its business with G&K.  Therefore, based on the unambiguous language of the two letters, the Court finds that Crown terminated the Service Agreement on May 16, 2005.

Second, the Court must determine if Crown prematurely terminated the Service Agreement and, if so, was it justified in doing so.  Under the Service Agreement, Crown had the

right to terminate the contract without penalty if G&K failed to render quality services, provided that Crown first gave G&K prior notice by certified mail of G&K's service deficiencies and sixty days from receipt of the notice to resolve the problems.  In this case, assuming that the April 25, 2005 letter was sent by certified mail, this letter would serve as the prior notice of G&K's service  deficiencies.  As such, G&K would have had sixty days from April 25, 2005 to resolve the service deficiencies before Crown could regard the Service Agreement as terminated.  May 16, 2005, however, is well within sixty days of April 25, 2006.  Thus, Crown failed to provide G&K the requisite sixty days before terminating the Service Agreement.  Accordingly, the Court finds that Crown did prematurely terminate the Service Agreement.

Despite its premature termination of the Service Agreement, Crown contends that its was not obligated to provide G&K with any notice of service deficiencies and, thus, its premature termination was justified.  Crown first contends that it was permitted to terminate the commutative Service Agreement because G&K failed to satisfy its obligation to render quality services and, as such, Crown was justified in prematurely terminating the Service Agreement.[3]  Next, Crown asserts that it was not required to give G&K any notice of service deficiencies because such notice would have been vain and useless.

Initially, the Court agrees with Crown that the Service Agreement was a commutative

---

[3] Even if Crown's April 25, 2005 letter constituted notice of G&K's failure to provide quality services as required in the Service Guarantee section of the Service Agreement, such notice would still be deficient because

contract.[4]  As a commutative contract and pursuant to article 2016 of the Louisiana Civil Code,[5] Crown argues that it could regard the Service Agreement as dissolved as soon as G&K failed to fulfill its obligation to provide quality services.  The Court, however, disagrees.

Crown's interpretation of article 2016 totally disregards the notice requirements contained within the Service Agreement and the fact that "[c]ontracts have the effect of law between the parties and may be dissolved only through the consent of the parties or on grounds provided by law." La. Civ. Code art. 1983.  Moreover, Crown's interpretation would render the notice requirements of the Service Agreement, and all contractual notice requirements, meaningless.  Most importantly, however, Crown's interpretation disregards article 2017, which provides "parties may expressly agree that the contract shall be dissolved for the failure to perform a particular obligation.  In that case, the contract is deemed dissolved at the time it provides for."  Therefore, G&K's failure to provide quality services, whether actual or alleged, is of no relief to Crown.  Regardless of G&K's derelict services, Crown was required to give notice to G&K of G&K's service deficiencies and sixty days to resolve the deficiencies before Crown could properly and without punishment regard the Service Agreement as terminated.

Crown also argues that it was not required to give G&K notice of G&K's service deficiencies because such notice would have been vain and useless.  In support of its position, Crown offers four pieces of evidence: (1) an affidavit of its president indicating that numerous verbal and written complaints were made by Crown to G&K concerning G&K's service

---

[4] "A contract is commutative when the performance of the obligation of each party is correlative to the performance of the other."  La. Civ. Code art. 1911.

[5] Under article 2016, "when it is evident that the obligor will not perform, the obligee may regard the contract as dissolved without any notice to the obligor."  *Id*. art. 2016.

deficiencies, specifically referencing Mr. Bullinay's services; (2) an email dated April 1, 2005 from Crown to G&K; (3) an email dated April 12, 2005 from Crown to G&K; and (4) the April 25, 2005 letter from Crown to G&K.  In the emails and letter, Crown detailed problems that had occurred with Mr. Bullinay's services and requested that G&K improve its services.  Based on this evidence, Crown argues that any notice that it gave to G&K regarding G&K's service deficiencies would be vain and useless because G&K previously failed to rectify its behavior and would continue to disregard Crown's communications.  Citing to *Williams v. Humble Oil & Refining Co.*, 290 F. Supp. 408, 420 (E.D. La. 1968), Crown contends that the vain and useless nature of its notice renders such notice unnecessary under Louisiana law and, as such, it could terminate the Service Agreement without providing G&K with any notice.

In *Williams*, the court acknowledged that there are two situations in which a party can urge that notice would be vain and useless and, as such, be absolved for failing to provide notice. *Id*.  Those two situations occur when an obligor either denies the existence of the contract or denies the existence of an obligation under the contract.  *Id*.  The reason for this jurisprudential rule "'is that it would be inconsistent for one to deny the obligation of a contract, or to deny that he had violated the obligation, and at the same time urge that a proper demand might have brought forth a performance of the obligation on his part.'"  *Id*. (citing *Louisiana Farms Co. v. Yazoo & M.V.R. Co.*, 154 So. 445, 446 (La. 1934)).  With this in mind, Crown basically contends that G&K, by failing to render quality services after all of Crown's notices, essentially denied it had violated its obligation to render quality services and, therefore, obviated the need for any further notice by Crown.

The problem with Crown's argument is that the jurisprudential vain and useless doctrine

has been legislatively codified by article 2016 of the Louisiana Civil Code, which provides "when it is evident that the obligor will not perform, the obligee may regard the contract as dissolved without any notice to the obligor." Article 2016, however, may be disregarded or modified under article 2017 by an express agreement of the parties. In the present case, the parties stipulated that Crown could regard the Service Agreement as terminated if G&K failed to provide quality services, Crown provided proper notice of such failure to G&K, and G&K failed to resolve the failure within sixty days. Crown cannot ignore its contractual obligations just because G&K may not have resolved its allegedly inadequate services in response to improper notice, such as emails or telephone calls, which required no response. Accordingly, Crown's vain and useless argument cannot prevail.

Third, in addition to arguing that Crown prematurely terminated the Service Agreement, G&K contends that it is entitled to liquidated damages, attorneys' fees, and costs pursuant to the Cancellation Without Cause section of the Service Agreement. G&K's asserted entitlement is contingent upon Crown's breach or premature termination of the Service Agreement for any reason, except for a reason set forth in the "Guarantee clause" above. In the Service Agreement, there is a Garment Quality Guarantee section and a Service Guarantee section. The Service Agreement, however, makes no reference as to whether "Guarantee clause" applies to both, only one, or neither of these sections. Since both parties have assumed that "Guarantee clause" refers to the Service Guarantee section, the Court will also assume the same, especially since such an interpretation is logical.

Pursuant to the April 25, 2005 letter, one of the two reasons Crown terminated the Service Agreement was G&K's failure to provide quality services as required in the Service

-9-

Guarantee section. As such, Crown argues that G&K cannot recover any liquidated damages, attorneys' fees, or costs because it prematurely terminated the Service Agreement for a reason specified in the "Guarantee clause." On the other hand, G&K contends that the "except for the reasons set forth in the Guarantee clause above" language required Crown to comply with the notice provisions of the "Guarantee clause" before it could terminate the Service Agreement without penalty. Moreover, the May 16, 2005 letter, which officially terminated the Service Agreement, only mentions Crown's absorption of the rising unreturned uniform costs, which is not a reason specified in the Service Guarantee section, as the reason for terminating the Service Agreement. Thus, G&K asserts that Crown terminated the Service Agreement solely because of the unreturned uniform costs, which is not a reason specified in the "Guarantee clause."

As to G&K's argument that the "except for the reasons set forth in the Guarantee clause above" language required Crown to comply with the notice provisions of the "Guarantee clause" before it could properly terminate the Service Agreement, G&K disregards the "prematurely terminates" language of the Cancellation Without Cause section. According to G&K's reading, "prematurely terminates" and "breaches" would mean the same thing and, as such, the inclusion of both terms would be superfluous. Instead, the two terms should be read as serving different purposes and having different meanings. "Breaches" should be read to mean terminating the Service Agreement for a reason other than those listed in the "Guarantee clause." Whereas, "prematurely terminates" should be read to mean terminating the Service Agreement for a reason listed in the Guarantee clause, but failing to comply with the notice provisions. This is the proper reading because it avoids redundant repetition. Otherwise, there would have been no reason to include both terms.

As to whether Crown terminated the Service Agreement because of G&K's failure to provide quality services, which would not obligate Crown for liquidated damages, or to avoid paying unreturned uniform costs, which would obligate Crown for liquidated damages, the Court finds there is a genuine issue of material fact.  The April 25th letter and other correspondence between Crown and G&K indicates that Crown was displeased with Mr. Bullinay's and G&K's services.  The May16th letter, however, indicates that the unreturned uniform costs was the only reason for the termination.  Accordingly, there is a factual issue as to whether both reasons or just the unreturned uniform costs caused the termination.  Therefore, viewing the facts and drawing all inferences in the light most favorable to the nonmovant, the Court cannot grant summary judgment as to Crown's liability for liquidated damages, attorneys' fees, or costs.

## IV.    CONCLUSION

For the foregoing reasons, G&K's motion for summary judgment is GRANTED IN PART to the extent that Crown breached the Service Agreement.  G&K's motion for summary judgment, however, is DENIED IN PART to the extent that Crown would be liable for liquidated damages, attorneys' fees, or costs.

New Orleans, Louisiana, this   6th   day of   April  , 2006.

_____
UNITED STATES DISTRICT JUDGE