UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **G&K SERVICES, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER  05-2614** |
| **CROWN ROOFING SERVICES, INC.** | * | **SECTION "L" (4)** |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.       Procedural History

On February 21, 2005, G&K Services, Inc. ("G&K"), a uniform supply company, and

Crown Roofing Services, Inc. ("Crown"), a roofing company, entered into Service Agreement

No. 602639.  The Service Agreement provided that G&K would supply Crown with certain

services, a minimum number of uniforms, and other items for a period of sixty months in return

for an agreed upon price.

By April of 2005, Crown began to experience difficulties with this business relationship.

After several communications between the parties, Crown's President, Mr. Ray Palmer, sent a

letter to G&K on May 16, 2005, terminating the Service Agreement.  On June 24, 2005, G&K

filed this action seeking liquidated damages and attorney's fees and costs.

On April 6, 2006, the Court granted in part G&K's Motion for Summary Judgment.  The

Court held that Crown prematurely terminated the Service Agreement by its May 16, 2005 letter

to G&K because it failed to give G&K sixty days after notice to resolve any problems prior to

termination, as required by the Service Agreement.  The Court found, however, that there was a

genuine issue of material fact as to the reason for Crown's termination.  On May 22, 2006, the

Court denied the Plaintiff's Motion for Partial Reconsideration of this ruling.

Therefore, on August 28, 2006, the case was tried to the Court without a jury to

determine the reason for Crown's termination.  The Court, after having carefully considered the

testimony of all witnesses, the exhibits entered at trial, and the record, hereby enters its findings

of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1]

## II.     Findings of Fact

The Plaintiff, G&K, is a Minnesota corporation doing business within this district.  The

Defendant, Crown, is a Louisiana corporation with its principal place of business in Jefferson,

Louisiana.

On January 30, 2003, G&K and Crown entered into Service Agreement No. 357822,

wherein G&K agreed to provide uniforms and services to Crown for thirty-six months.  The

contract included a "service guarantee" provision:

> G&K will:  (a) return all items picked up on the normal delivery day by the next
> scheduled delivery day; (b) repair and return to Customer all items in need of repair
> on the next scheduled delivery day; (c) return all items in a clean and useable
> condition; (d) deliver in one week, items of a standard size and color ordered for all
> new employees provided such order was received on a regular delivery day.

Pl.'s ex. 1.

The contract price was based upon the inventory of uniforms Crown rented from G&K.

Each Crown employee was given eleven shirts and eleven pairs of pants, so that at any one time

an employee would have five uniforms in the closet to wear that week, five at G&K being

cleaned, and one on his or her back.  G&K billed Crown for five uniforms per employee on a

---

[1]  To the extent any finding of fact constitutes a conclusion of law, the Court hereby
adopts it as such.  To the extent any conclusion of law constitutes a finding of fact, the Court
hereby adopts it as such.

weekly basis.  This conformed to the industry standard of billing for 50% of the total circulating

inventory of uniforms.  Pursuant to the Addendum to the Service Agreement, industrial shirts

and pants were billed at $0.70 per garment, and cotton shirts and pants were billed at $0.90 per

garment.  Pl.'s ex. 1.

The uniforms would remain G&K's property and were to be returned upon the

termination of the employee or the agreement.  If the uniforms were not returned or were

returned damaged, Crown was responsible for the replacement cost of the uniforms.  The

replacement cost for industrial shirts and pants was $10.00 per garment.  The replacement cost

for cotton shirts was $15.00 garment.  The replacement cost for cotton pants was $18.00 per

garment.  Pl.'s ex. 1.

The contract also contained a "cancellation without cause" provision:

> If Customer breaches or prematurely terminates this Agreement for any reason,
> except for reasons set forth in the Guarantee clause above, Customer will pay G&K,
> as liquidated damages (not as a penalty) an amount equal to fifty percent (50%) of
> the average weekly amounts invoiced to Customer during the ninety (90) days
> preceding the breach multiplied by the number of weeks remaining in the term of this
> Agreement, beginning with the date of breach.  These damages will be in addition
> to all other amounts owed by Customer to G&K on the date of breach or wrongful
> termination, including any unreturned or damaged items resulting from the breach.
> Customer agrees to pay G&K all costs, including reasonable attorney's fees, incurred
> by G&K to enforce Customer's obligations under this Agreement.

Pl.'s ex. 1.

Geoffry Willard was Crown's human resources manager and he managed the uniform

contract with G&K.  When Mr. Willard took over in December 2004, he discovered that Crown

was being charged for uniforms for employees who were no longer employed.  The evidence

suggests that Crown employees would ask G&K to continue billing the weekly rental rate for

employees who had left but not returned their uniforms to allow Crown to track down the

missing uniforms, and thus avoid the high replacement cost.  Due to poor internal

communications within Crown, Mr. Palmer was unaware of this arrangement.

Mr. Willard eventually reported the employees as separated and asked G&K to cease

billing the rental rate for these employees' uniforms.  G&K honored this request and instead

billed Crown approximately $18,000 for these employees' unreturned uniforms.  Mr. Willard

negotiated with G&K and had it agree to waive this $18,000 charge, provided that Crown extend

its relationship with G&K by entering into a second Service Agreement.

On February 21, 2005, the parties executed Service Agreement No. 602639 ("Service

Agreement").  The terms and conditions of the second Service Agreement are identical to the

first, except for the length of the second Service Agreement, which is sixty months.  Pl.'s ex. 2.

On February 24, 2005, Crown instituted a program whereby it would attempt to pass

through the uniform rental costs to its employees.  Specifically, Crown notified its employees

that it would withhold $10 per paycheck until $400 had accumulated.  Pl.'s ex. 3.  This fund

would be used to satisfy the replacement cost if the uniforms were not returned upon separation

from Crown.  If the uniforms were returned, the $400 would be refunded to the employee.

Due to high employee turnover in the roofing business, however, Crown continued to

have problems with unreturned uniforms.  In April of 2005, G&K billed Crown for $5,108.53,

much of which was unreturned uniform charges.  Pl.'s ex. 26.  The parties met on April 13, 2005

to discuss possible solutions to Crown's problem.  In a letter sent later that day memorializing

the meeting, G&K offered some suggestions as to how Crown could minimize its exposure to

high unreturned uniform charges, including instituting a probationary period in which new

employees would not get uniforms.  Pl.'s ex. 5.

By this point in time, however, Mr. Palmer had decided that it was no longer in Crown's

best interest to continue the relationship with G&K.  Accordingly, on April 25, 2005, Crown sent

G&K a letter suggesting that it was faced with the business decision to terminate business with

G&K.  The April 25 letter repeated Crown's concerns about high unreturned uniform charges,

but it also expressed dissatisfaction with the G&K employee responsible for servicing Crown's

account, Mitch Bullinay.  Specifically, Crown complained that Mr. Bullinay repeatedly failed to

deliver uniforms, delivered the wrong number of uniforms, and delivered uniforms to the wrong

employee's locker or place in the facility, which made the uniforms difficult to locate.  Crown

also complained that Mr. Bullinay would ignore Crown employees who had approached him

with questions by walking away without even attempting to resolve their issues.  Lastly, Crown

complained that Mr. Bullinay failed to deliver soap and failed to replace air fresheners, for which

it was being charged, and would leave dirty floor mats rolled up and blocking doors.

After one final meeting, G&K sent Crown a letter on May 12, 2005, again offering

suggestions on how Crown could reduce its exposure to high unreturned uniform charges.  Pl.'s

ex. 8.

On May 16, 2005, Crown sent a letter to G&K immediately terminating its services due

to the high cost of unreturned uniform charges.  Pl.'s ex. 9.  This letter made no mention of, or

reference to, Crown's dissatisfaction with Mr. Bullinay's or G&K's services.  After having

carefully considered the testimony of all witnesses, the exhibits entered at trial, and the record,

the Court finds that G&K has proven by a preponderance of the evidence that Crown terminated

the Service Agreement for purely economic reasons, specifically because Crown concluded that

it could no longer afford to pay unreturned uniform charges.  This was the reason explicitly

stated both to G&K and to Crown's own employees on numerous occasions and it was the sole

reason given in Crown's termination letter of May 16, 2005.  Moreover, during the course of the

trial, Mr. Palmer confirmed that the high cost of unreturned uniforms was his primary concern

with the contract.

Crown's contention that G&K failed to provide adequate service is not persuasive.  Mr.

Bullinay delivered hundreds of uniforms each week to Crown and organized them in lockers for

Crown's employees.  While he may have forgotten or misplaced a uniform occasionally, these

honest oversights were to be expected in this type of business relationship.  Furthermore, Mr.

Bullinay testified that the "service" complaints in Crown's April 25, 2005 letter were merely

misunderstandings.  For example, when Crown complained about missing soap and air

fresheners, Mr. Bullinay showed Crown where he had placed these items.

Thus, the Court finds that Crown terminated the Service Agreement to avoid the high

cost of unreturned uniforms.

### III.    Conclusions of Law

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The

case is governed by Louisiana law.

Contracts are the law between the parties.  La. Civ. Code Ann. art. 1983 (2006).  "When

the words of a contract are clear and explicit and lead to no absurd consequences, no further

interpretation may be made in search of the parties' intent."  La. Civ. Code Ann. art. 2046.  In

this case, the Service Agreement is clear and unambiguous.  G&K agreed to rent uniforms

consisting of shirts and pants to Crown for a period of sixty months in return for a weekly rental

fee per garment.  G&K agreed to provide each Crown employee with eleven uniforms and

agreed to make weekly deliveries/pick-ups.  If Crown employees turned in uniforms on delivery

days, G&K agreed to clean the uniforms and make any necessary repairs.[2]

The Court has previously held that Crown's letter of May 16, 2005 prematurely

terminated the Service Agreement because it failed to give the requisite notice.  The Court also

previously found that if the termination was based upon one of the four "service guarantees" set

forth in the Service Agreement, Crown would not be obligated to pay G&K liquidated damages.

However, today the Court finds that Crown terminated the contract for some other reason,

namely because it could no longer afford unreturned uniform charges.  This unjustified

termination triggers the "cancellation without cause" provision of the Service Agreement.

Pursuant to this provision, G&K is entitled to $144,294.25 in liquidated damages,[3] $4,163.90 in

unreturned uniform charges and $7,934.36 for unpaid invoices,[4] and reasonable attorney's fees

and costs of this litigation.

---

[2] Crown argues that under the Service Agreement, it should only be charged when a garment is turned in for cleaning.  The clear language of the Service Agreement and its Addendum refutes this argument.  The contract clearly provides for weekly *rental* charges based on the number of uniforms in circulation.  Moreover, if Crown were correct that this is a mere laundering contract, then Crown would not have to pay anything for its *use* of the uniforms, as long as they were not turned in for cleaning.

[3] The parties to a contract may agree to an amount, or a formula to be used to determine an amount, to be paid as liquidated damages in the event of breach.  The Court will give effect to such a provision if, as in this case, it is a true approximation of actual damages.  La. Civ. Code Ann. art. 2005.

[4] Although Crown has not stipulated to these amounts, Crown has stipulated to the fact that it has no evidence to dispute these amounts.

**IV.    Conclusion**

For the foregoing reasons, Judgment will be entered in favor of the Plaintiff, G&K

Services, Inc., and against the Defendant, Crown Roofing Services, Inc., in the amount of One

Hundred Fifty-Six Thousand, Three Hundred Ninety-Two and 51/100 ($156,392.51) Dollars,

with interest thereon at the rate of seven percent (7%) per annum, from June 24, 2005, until paid

in full.  The Plaintiff is also entitled to attorney's fees and costs, however, the Court will

determine these amounts at a later date should the parties be unable to reach an agreement on the

appropriate amount.


New Orleans, Louisiana, this __12th__ day of __September__, 2006.


_____

UNITED STATES DISTRICT JUDGE